This case is 418-0780 Kren v. White. For the appellant is Scott Severs. You are he, sir? I'm Scott Severs, Your Honor. And for the appellee is Aaron Dozman. You are he? Mr. Severs, you may proceed, sir. Thank you, Mr. Court. Counsel? Counsel. Your Honors, this case is about statutory interpretation and about the Secretary of State's efforts to read into statutes something the Secretary wishes were there, but which is not. Section 3-401C-1 of the Vehicle Code contains a very key provision today that the freight of each emission is originally manufactured for operation on highways. That's because the Code allows the titling and registration of vehicles only if the vehicle is originally manufactured for operation on highways. Now, in this particular case, the Secretary of State found that my client's Humvee was not originally manufactured for operation on highways. We contend now against the manifest way of the evidence. Now, it's important to assume, we have to step back a second and look at the term highways. Because a highway is not a term that we think of it, really. It's not our way of saying that. It's not necessarily U.S. 51. It's not necessarily an interstate highway. It's pretty much public roadways in general. That's because the definition of a highway, under the Illinois Vehicle Code, is the entire width between the boundary lines of every way publicly maintained of any part thereof is open to the use of for public purposes of vehicle travel or located on public school property. So that means when we're saying that a particular vehicle is originally manufactured for operation on highways, we're really talking about public roads. So vehicles not just limited to, say, Interstate 55, for instance. Now, what Section 3-401 does not say is it doesn't say that it's originally manufactured solely or primarily or exclusively for operation on highways. We simply need to have the vehicle was originally manufactured for operation on highways. And that's the case here, Your Honor. Well, I'm not sure I understand the distinction you're trying to draw. But when you say solely or exclusively as opposed to what, what do you mean? Well, Your Honor, the Secretary of State here is trying to say that this vehicle, the Humvee, has all kinds of different capabilities and that it has these capabilities where it can go off-road and that it can be really quite capable beyond simply driving on the road and that consequently that we shouldn't be saying that this is originally manufactured for operation on a highway if it's really an off-road vehicle. But that's erroneous because actually a key component of this vehicle is its ability to operate on highways. Well, let me – we hear a lot of different cases. We're on this Court a long time. And there are some areas I'm familiar with and some I'm not. This is the latter. So, you know, I need you to kind of help clarify some of this terminology. Let's assume it were an off-road vehicle. First, what does that mean and what's the effect of it? Well, if it were an exclusively off-road vehicle, then it would not be able to be titled middle of the street under that one vehicle code because one of the requirements at least under Section 3-401 is that it was originally manufactured for operation on a highway. The record here is – Just holding this off for a moment, originally manufactured, how did you put it, for use on the highways? Actually for operation on highways. For operation on the highways, okay. What off-road vehicle wouldn't be also capable of being driven on a highway? Well, it's not that it's not capable. It's just not originally manufactured for the operation or for operation on a highway. So one example would be, say, the Gators we see that some people have. The what? They're kind of a fancy golf cart. It's got some knobby tires on it and people use them around farms and they get around and haul things. That's not designed to go on the highway, on the roadways. That is designed to go back and forth and clean some wood up and stuff like that. How about a combine or a farm tractor? Well, that is for very limited purposes. That's not designed to be able to go on all the different roadways of Illinois, whereas a passenger vehicle certainly is, and we contend this is as well. So very limited purposes there. But an ATV is not something that is just designed for operation on highways. There are a number of vehicles like that. So an ATV is not capable of being licensed? An ATV is not capable of being licensed for operation on highways as a regular motor vehicle, a regular vehicle. When it comes to that particular finding, are you suggesting that we apply the NOVO standard of review, or are you acknowledging that that would require application of the MAP as part of the evidence standard? The latter, Your Honor. I contend that it was a factual determination that the Secretary of State made that this particular vehicle was not originally manufactured for operation on highways. That was a factual mistake, and it is subject to manifest by the evidence. I think the evidence is actually clear that it was wrong. We have evidence in the case, for example, AM General was the actual manufacturer of the Humvee, and the manufacturer's own marketing materials state, as a feature of a Humvee, that it is, quote, built for all types of road and cross-country touring. So roads, built for roads, that means originally manufactured for operation on highways. We have a Humvee operator's manual that was also included in the record, and that provision states that these vehicles are tactical vehicles designed for use over all types of roads. Again, originally manufactured for operation on highways. We have a National Highway Traffic Safety Administration interpretation that says that Humvees, quote, spend 60% of their operational life on primary and secondary roads, and that, therefore, they have been manufactured primarily for use on such public roads, unquote. So, again, originally manufactured for operation on highways. That's the National Highway Traffic Safety Administration, and that's the material that's in this record as well. Doesn't your vehicle have an SF-97 stamp on it that says,  No, it does not, Your Honor. That was actually the original Humvee that my client had. He actually owned two Humvees. The first one he got did, in fact, have that stamp on it. The second one, SF-97, did not have that stamp on it. So it was his view, having an altogether different document from the federal government that didn't limit it to operator's only, and, therefore, he could use it. Who put the stamp on it? I believe it might have been the actual company that sold it, the dealer that sold the vehicle. I don't know that, and I don't believe it's in the record. So the business about being exclusively for operation on highways, whose intent is it that's at issue? The manufacturers? The owners? What? The federal government's intent? What is it? No. Who are you talking about? I think since the phrase is originally manufactured for operation on highways, I think that, at minimum, it was certainly the manufacturer's intent. I don't think that would be the case. It may be others as well, but here we have GM General, the manufacturer, who specifically identifies that it is intended to go on the roads. And it's not surprising, because when you think about it, there's nothing that's a false contradiction there to say that a military vehicle can't go on the roadway. We've all been on the roads and seen military vehicles on the roads. We know the roads are designed for it. We know that the interstate system is actually something that is designed to allow the defense vehicles to move around. There's federal funding that specifically contemplates funding the federal highway systems because of the need to be able to transport military vehicles. Well, when you talk about it, we see military using the roads. You see people, I don't know what purpose, but you're right. You see trucks, but these trucks that say U.S. Army and whatever, they look just like any other kind of truck, aren't they? Is there some difference? Well, I can't answer that specifically, Your Honor, but there certainly can be differences, and the situation is that some military vehicles will certainly cannot be titled and registrated under Illinois law. There's no question about it. A tank cannot. An armored personnel carrier cannot. Let me cut through some of the acronyms and other stuff here and ask you a question that I'll be asking Mr. Gosselin, and that is, why not? What's the Secretary of State's problem with this vehicle? In other words, gee, if this is going to be licensed and registered, given registration as a regular vehicle, then some bad thing will happen, I guess. What's the bad thing? What are we talking about? Well, I guess that is a concern. I don't know what the Secretary of State's concern necessarily was, but we know from the decision, at least, that the Secretary of State spent a fair amount of time trying to make my client comply with the National Highway Traffic Safety Administration's Federal Motor Vehicle Safety Standards. He really wanted to comply with those General Passenger Vehicle Standards, and so safety nationally is probably some bit of a concern. Well, okay. Again, pausing right there, and I apologize for interrupting you, Counsel, but this is, I'm really struggling to understand this. What aspect of this vehicle isn't in compliance with those standards? Well, it's hard to say, Your Honor, because actual military vehicles, including this Humvee, they strive, actually, to comply with the Federal Motor Vehicle Standards. It doesn't have airbags. It does not have airbags, that's true. It doesn't meet standards for emissions. It doesn't meet the U.S. EPA standards for emissions because it's exempted from those emission standards. Well, it doesn't meet it. I mean, yes, it's exempted because it's a military vehicle, but that's why most places, when you look up Humvees, they tell you, be careful, check with your Secretary of State's office, because many of these are not licensable in your state, right? Certainly, Your Honor. I mean, anybody that goes and buys these things normally buys them with the understanding that, gee, you know what, $12,000 isn't bad for a truck like this, but I've got to keep in mind the fact that one of the reasons I'm able to buy it for $12,000 is because it may not be registrable as a vehicle to drive on the highway, right? Absolutely fair, Your Honor, and the fact of the matter is that when he got his first Humvee and it said on the government's version of the title saying, he understood that, and that's why he sold that vehicle, got a new Humvee that didn't have that stamp on it, thought he would be able to get that title. In fact, he actually did get a title with even issued license plates for it. But then he went back and said that he had, there were some errors in the title. The Secretary of State corrected the title. He ended up returning the plates over, because then he realized that he made a mistake in giving him the plates in the first place. The situation is that he contends he should be able to get this vehicle titled and licensed. There is a provision under the Illinois Bill of Rights for foreign military vehicles. For what? For former military vehicles. It contemplates that they may be titled and registered. It doesn't give them any incredibly unique status at all. It gives them a little bit of a break on the registration fees. It provides for unique license plates. Well, if there's a provision for that, why doesn't it apply to his vehicle? Why are we here? We do contend that it does apply to his vehicle, Your Honor. And the Secretary of State says it doesn't? The Secretary of State says that that provision doesn't give him any special footing. And to some degree, he's correct. But the situation is, nonetheless, he has to show that this vehicle was originally manufactured for operation on highways. And we believe that the evidence in the record shows that that's the case. The evidence that the Secretary of State has shown to be contrary really wasn't contrary, Your Honor. For example, at times it said that we had something where the AM General's general counsel had written in and said, Hey, we sell these to the military exclusively. This is meant for the military, this vehicle. Well, the fact that a vehicle is made for the military, marketed for the military, does not mean that it's not originally manufactured for operation on highways. It's not usually inconsistent at all. So that is not really contradictory evidence at all. Further, they said they don't sell, endorse, or support the sale of Humvees to the public or to private entities except in very limited circumstances. And then he talks on about how they're not required or designed to meet federal motor vehicle safety standards. They're not equipped with airbags. They don't meet federal emission standards. Unless commercially designed and manufactured, they don't have VIN numbers. I thought he was pretty clear in indicating that this isn't intended to be sold to a private individual and given on the highway. Well, he didn't actually say that it was not meant to be manufactured for operation on a highway. And when he made these arguments, the AM General made similar arguments to the National Highway Traffic Safety Administration. The administration rejected those arguments and said, Actually, Humvee is primarily designed or primarily used on highways, and it is deemed to be manufactured primarily for use on public roads. This is the National Highway Traffic Safety Administration itself that said that Humvee is this way. But Illinois doesn't recognize that. Well, I guess we're asking the court to recognize that that NHTSA determination has some weight. Are we the only state that doesn't? That I don't know, Your Honor. I know there's a division among the states, as I understand it, as to whether or not Humvee can be entitled to VIN. So two questions. One, why don't we, and are the reasons why we don't something that this court can review or second guess or disregard? We contend that Illinois should register this vehicle because it was originally manufactured for operation on highways and because, while it does not comply with the Federal Motor Vehicle Safety Standards, it does comply with a different set of standards, and that's the requirement under Section 3-104 of the Illinois Vehicle Code. It needs to comply with federal safety and emissions standards, and it does comply with those standards, but it complies with U.S. military standards. So that's what we contend that it complies with. It satisfies those by actually complying with U.S. military standards. Military standards do address safety, Your Honor. And the thing is, those standards, they actually aim to try to actually comply with the Federal Motor Vehicle Safety Standards. They don't necessarily march lockstep with them. They certainly strive to do so, and that's in the recommendations. Well, let me state a proposition to you that I think is what's going on, and maybe it's not. But the Secretary decided that you have to prove compliance with the National Highway Transportation Administrative Standards, whereas you disagree and claim that Section 104-G just speaks of federal safety and emissions standards, which are enough, but not the other, which shouldn't be required. Is that the correct statement? It is, Your Honor, because the actual term in 104-G is federal safety and emissions standards. It doesn't say National Highway Transportation Administration. It doesn't say Federal Motor Vehicle Safety Standards. I'm pausing right there. And again, I apologize. I've got to stop you when a thought comes to mind. Is it improper, and would we have to reverse the Secretary, would we have to conclude it's improper for the Secretary to have decided that the federal safety and emissions standards in the statute means the National Highway Transportation Safety Administration standards? I think this Court needs to reverse the Secretary's decision because the Secretary's decision did hold my client to the NHTSA standards. My question is, let's assume you're right. Why was it improper for the Secretary of State to view those standards as the ones that apply? Because they're not the sole standards that apply. There's nothing that actually specifies that these are the only standards that apply to motor vehicles in the state of Illinois. Well, as the Secretary, as the executive in charge with this determination, we have the discretion and authority when the statute speaks of federal safety and emissions standards to say those are the standards I'm going to look to. Why not? Why can't they do that? Because elsewhere in the vehicle code, when the vehicle code actually tries to address standards, when it talks about the Federal Motor Vehicle Safety Standards, it specifies the Federal Motor Vehicle Safety Standards. When it's talking about the NHTSA standards, it specifies the NHTSA standards. So presumably, then, when the General Assembly passed this provision in these very general terms, it didn't let it simply… Well, actually, Ed, I mention this because I want Mr. Dozman to address it because I'm afraid I won't remember it. But this argument, I think, is very significant. That is, if the legislature has chosen one instance to specify the NHTSA standards and another instance to just speak of federal safety and emissions standards, then what I want to hear, Mr. Dozman, is why Mr. Sievers isn't correct that they meant different things. So what do you get a chance? And making reference to that because I'm afraid that, you know, paying attention to the argument, I won't remember it when he's up there. So go ahead. I'm in the same situation. Go ahead. What I can simply say is that this can't be the only standard. I mean, we can look to the effect of the former military vehicle provision itself to get some idea about that. And that is Section 3-804.3. And that defines, well, actually, the definition of a former military vehicle in the Vehicle Code is a vehicle or trailer, regardless of size, weight, or year of manufacture, that was manufactured using any country's military forces and is designed to depict or represent military design or markets of any country, not just the U.S.'s. So almost by definition, we're saying you can't make you comply with the U.S. federal motor vehicle standards, or the NHTSA standards because the former military vehicle provision contemplates that your vehicle might be an Italian motor vehicle. Before I conclude, let me ask this question, going back to nearly what I mentioned. Your position is the Secretary has improperly applied the NHTSA standards and not the more generic federal safety and emissions standards. If we were to conclude that it was proper for the Secretary to use the NHTSA standards, do you lose? Is this case then over? I think the Secretary of State is still wrong on factually determining that this particular vehicle was not originally manufactured for operation in the United States. Well, to be more explicit, and this is a better way of putting it, if we were to conclude that the NHTSA standards are the appropriate standards and the Secretary appropriately applied them to this case, the, I guess, conclusion from the Secretary's point of view is that your vehicle didn't meet those standards. Is it your claim that your vehicle, the vehicle in question, or that somebody meets the NHTSA standards? My understanding is you're not making that claim. You're not making that claim that this vehicle complies with NHTSA standards. You're not making the claim that it complies with NHTSA standards. Well, then, wouldn't it follow that if they apply, and if the Secretary of State is proper in applying those standards, then this case would be over. You would lose because we can't conclude the suckers are in the draw. I believe you have to make one more step, one more inferential step, Your Honor, and that you have to say that because it does not comply with the federal motor vehicle safety standards, safety standards, NHTSA standards, it therefore is not originally manufactured for operation on highways. And it's that inference in between that I don't think is actually necessarily the case. So your position is if we were to conclude the record supports that it was originally manufactured for use on the highway as a term of art, then the lack of compliance with the NHTSA standards wouldn't matter? Then that might be the case for all of us. That might be ain't good enough, as they say. I recognize that. So, I mean, would that, would the original intention of manufacture trump the absence of the compliance with the NHTSA standards? I think that if it was determined that it was originally manufactured, that the lack of compliance with NHTSA standards doesn't matter because it already complies with federal military standards. Okay, well, I appreciate this, Counsel. And I want to thank you because I've asked an awful lot of questions between a lot of ignorance and struggle with this case, and I thank you for your direct answers. Okay, Mr. Gozeman. Your turn. I'm Assistant Attorney General Larry Gozeman, and I represent the Secretary of State and his hearing officer. You can question that and warn me about it. 104G isn't the basis of the Secretary's decision here. 104G, yes, talks about federal safety and emissions standards, and the reason that it's not specific about that is because Illinois and the states generally, except for one, Colorado and California, do not regulate safety and emissions standards. They're preempted from doing so. And so Illinois has no business in regulating the standards for the vehicles that pass through the channels of commerce to reach consumers. We just don't. We totally defer to what federal agencies require for motor vehicles. That's what 104G is about. And if your vehicle does not meet those standards, 104G goes on to say that you need to go to the federal agencies to get documentation that proves that your vehicle complies with their standards. Well, are there more generic federal safety and emissions standards  than those which exist in the NHTSA standards? As far as I know, the Federal Motor Vehicle Safety Standards, FMVSS, are the motor vehicle safety standards for all passenger cars. I've cited the federal laws that govern emission and safety standards, and they also carve out exceptions for military vehicles because they almost object the military to them. Well, Mr. Seavers made the argument, which can be a very persuasive one, that the legislature, in some instances, has referred to the NHTSA standards by name, and that 104G refers to federal safety and emissions standards without referring to the NHTSA standards by name. Now, I should mention, the first job is as a legislative draftsman. They don't want a legislative reference rule. So I'm fully aware that this is a general rule of construction but not an absolute one, and they just might have made a mistake or not been familiar. But nonetheless, a strong inference is that if the legislature is referring to the same subject matter and refers specifically to an act in this one area and to a generic statement in the other, that they meant this to be different. Of course. The specific controls over the general, that's not common. Well, it's not just controls, but when they're talking about a general, they mean a general. That is, 104G does not mean the NHTSA standards would be one way of looking at it. Yet the secretary applied the NHTSA standards. So his argument is he shouldn't have done that because it's a more generic statement. His first question is, is his reference to what the statutes contain or don't contain correct? That it does contain specific references, I'll point you to the opening brief, page 17, has a few examples of that. I don't want to go too far down the rabbit hole of 104G because it's not the basis of the decision. 401C1 is the reason that this Humvee is not entitled to a regular vehicle registration. The Humvee was designed for the military and the military only. It was never designed or intended for the public. As such, a unique vehicle built exclusively for one customer and one customer only, it does not, it was not designed, manufactured, sold to retailers, to the general public for their use on streets and highways. And that's what the regulations used to, which is section 1010.203, which just adds clause to that originally manufactured statutory text in the code. And the Humvee just really doesn't need that. It is conceded that this vehicle was built for the military. It never intended to go beyond that customer and therefore is not originally manufactured for the highway as contemplated by the code and contemplated by the Secretary's regulations. I asked Mr. Sears this question, I'm trying to cut to the chase of what's going on here. What's the problem? You know, I've seen Humvees on the road in a military vehicle. So, gee, if the Humvee in this case were to be licensed, then the following badness would result. What is that? I think it's obvious what is at risk. It's not to me. That's why I'm asking. Safety is paramount on the highway. They're dangerous places. So this wouldn't be a safe vehicle on the highway? Is that the concern? Illinois doesn't know it's a safe vehicle. Normally we would look to federal law and say, did this vehicle that made its way to consumers comply with the overall federal requirements for safety? We can't do that because all we know is that this vehicle was built for the military per contractual specifications. And that doesn't really tell Illinois. Well, you know, you may be right technically and legally. But I'm just wondering, it's kind of a gut sense that this is so much bureaucratic, don't bother me with your problem, that you didn't jump through slash 361.4 when maybe, you know, in a more realistic sense, somebody actually looking at the vehicle from the Secretary of State's office could say, yeah, it looks safe to me. What about that? I don't think the front desk at the office is equipped to do that. And what we do have in the record, which I think is the dispositive piece of evidence, is a letter from the manufacturer, AM General, telling the Secretary of State, we never intend for this vehicle to be driven by the public on the roads. They don't sell, endorse, whatever. They just, it was never intended for that. And so receiving that letter, the Secretary of State said, we're not going to register these to be used on the road then, because the road is fairly public. So I suppose another way of putting it is my concern is it might be an entirely safe vehicle, but because we have these, you know, absence of whatever it is, he can't get it licensed. And there's no way, apparently, he can demonstrate, this is a safe vehicle, what's the problem? You know, this isn't exactly like hundreds of people lining up to get license plates. How many people are seeking to get authorization to register a Humvee? Is it really that big a problem? Well, there is a street legal version, or I shouldn't say street legal. There is a version of the Humvee, it's called a Hummer, that was built for the general public. And just the existence of a Hummer proves the point that the manufacturer made one for the public that complies with federal safety and emissions standards, otherwise it wouldn't be allowed to sell it in commerce. And then they made one for the military. They're recognizing that the public finds these vehicles cool. They have awesome capabilities. And so they made a version for the public. And when that passes through the normal channels of commerce, Illinois says, if that's good enough for the federal government, it's good enough for us. And that's what we have to rely on. We don't have people who can go through and do crash tests and whatever else the federal government does. We don't even know the federal government tests. So the basis of this decision is the originally manufactured component. And the test is not capabilities. Every vehicle is capable. We also don't have a way of testing capabilities. The test is, what's the purpose of this vehicle? Who is it made for? Was it made to drive on public roads among the public, by the public? And finding that it's not, in this case, it's not as manifest with the evidence. There's several pieces of evidence in this case that say many things. I think they're cobbled together, or I don't know where they were found, but they don't really speak to this vehicle. I'll rest on my feet for repeating those. We ask that if there are no further questions. He agreed to the standard review. We were talking here about the decision in trial court to be reviewed in the manifest way of the evidence. Yes. There's a factual dispute at the heart of this case, and that factual dispute is under 401c1 and the regulation in 1010.230. Okay. Well, thank you, counsel. As I mentioned to Mr. Sievers, I appreciate my questions betray an unusual amount of ignorance. And it was kind of you and your thorough responses. I appreciate it as I did in this case. So thank you. Okay. Mr. Sievers, any rebuttal, sir? Yes, Your Honor. Okay. One point that was raised was this idea that when this vehicle was manufactured, it was never contemplated that it would ever be used for the public. That's a little bit much. We all know that there is a military surplus, and a military surplus store that has been for all of my life in D.C. And we know that you can go buy a, you could have in the past, one of these Wiley's Jeeps many, many years ago. So anyone can certainly contemplate that when the U.S. military orders Humvees, that there will be a day when those Humvees are no longer going to be part of the U.S. military forces. And that someone's going to have to do it. I thought the criteria was originally manufactured. That's right. Not what it might possibly do in the future. That's right. So the idea that we say, hey, we can't contemplate this, what it might do in the future, that's really not the analysis here. That's the equation that really was a search in the manufacturing properties on the highways. This vehicle was. And that's why the NHTSA in its analysis said, we understand that this vehicle was originally designed for the military and it has military unique qualities to it. But we can't say that it's never going to go into the hands of the public. That's why they, through their analysis, said we're going to construe this particular vehicle as being one that's actually designed for the roads. It actually is a vehicle for the roads. To what extent should the Illinois Administrative Code be a factor in our decision? That's where it talks about vehicles designed, manufactured, marketed, and sold by said manufacturers for retail vehicle dealers for general street and highway use and operation. In another case, maybe some. In this case, nothing, Your Honor. That's because in the findings of fact, it's not cited. It's not cited. Footnotes drop from the decision. It mentions section 1010.230. Footnotes, serious things, counsel. I mean, after all, there it is. It is. It's right there. But that provision, one of the factors, one that's cited by the Secretary of State, is that the Secretary of State can refuse federal registration if a vehicle is not designed, manufactured, marketed, and sold by said manufacturer for retail vehicle dealers for general street and highway use and operation. Now, there is no finding of fact in this case that Plaintiff's Humvee was not manufactured or designed for general highway use and operation for the provision. There's no finding of fact addressing Plaintiff's Humvee was not marketed and sold by said manufacturer for retail vehicle dealers for any purpose, no longer specifically for general street and highway use. The findings of fact never speak of marketing or selling the Humvees to dealers, retail, or otherwise. And like I said, the conclusion of law on this case is based. It never even mentions section 1010.230. So, as the footnotes drop, it's not in the findings of fact or the conclusions of law that it was not applied or relied upon by the Secretary of State. It shouldn't be relied upon here. Thank you, counsel. We'll take this matter into the bridesmaids and have a recess for a few moments.